IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Jo Ann Reesman,

        Plaintiff,

v.                                                                                                  Case No. 13-1187-JTM

Carolyn W. Colvin,
Acting Commissioner of
Social Security Administration,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff Jo Ann Reesman disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The matter has been fully briefed by the parties, and the court is prepared to rule.

**I. Legal Standard**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). It

requires more than a scintilla, but less than a preponderance. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Evidence is insubstantial when it is overwhelmingly contradicted by other evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner. *Cowan*, 552 F.3d at 1185. Rather, the court must determine whether the Commissioner's final decision is "free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). The findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

A claimant is disabled only if he or she can establish that a physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents them from engaging in substantial gainful activity. *Brennan v. Astrue*, 501 F. Supp.2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The physical or mental impairment must be so severe that the individual cannot perform any of his or her past relevant work and cannot engage in other substantial gainful work existing in the national economy considering the individual's age, education and work experience. 42 U.S.C. § 423(d).

Pursuant to the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether an individual is disabled. If at any step a finding of disability or non-disability can be made, the evaluation process ends. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." 20 C.F.R. § 416.920(b). At step two, the agency will find non-disability unless the claimant shows that they have a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the agency determines whether the impairment that enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. 20 C.F.R. § 416.920(d). Before proceeding from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This RFC assessment is used to evaluate the claim at steps four and five.

If the claimant's impairment does not meet or equal a listed impairment in step three, the inquiry proceeds to step four, at which point the agency assesses whether the claimant can do his or her previous work; the claimant must show that they cannot perform their previous work or they are determined not to be disabled. 20 C.F.R. § 416.920(f). The fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the

national economy. 20 C.F.R. § 416.920(g); *see Barnhart v. Thomas*, 124 S. Ct. 376, 379–80 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson*, 992 F.2d at 1120; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II. History of Case[1]

Plaintiff Reesman protectively filed an application for Social Security Disability benefits on December 21, 2009, alleging disability since April 11, 2003.[2] The Social Security Administration denied her claim on February 2, 2010. R. at 91, 95–98. The SSA denied her claim once again upon reconsideration on March 22, 2010. R. at 92, 105–08. Reesman requested an administrative hearing on May 10, 2010. R. at 113.

Reesman's hearing was held before Administrative Law Judge Edward C. Werre on November 3, 2010. R. 47–90. On December 17, 2010, the ALJ issued his decision finding Reesman was not disabled. R. at 32–42. Reesman requested review of the ALJ's decision by the Appeals Council on January 12, 2011. R. at 219. The Council denied the request for review on January 13, 2012 and again on November 29, 2012 after receiving

---

[1] The record is attached to Dkt. 5 in several exhibits.
[2] Reesman amended her onset date to October 14, 2005 due to a decision from a previous claim for disability benefits that is *res judicata* for the earlier period. Plaintiff's Social Security Brief, Dkt. 6 at 2 n. 2.

4

additional evidence. R. 20–22, 6–12. This was the final act of the Commissioner. *See* Plaintiff's Social Security Brief, Dkt. 6 at 2.

In his opinion, the ALJ found that Reesman met the insured status requirements of the Social Security Act through June 30, 2008. R. at 34. At step one, the ALJ found that Reesman had not engaged in substantial gainful activity since her alleged onset date. R. at 34. At step two the ALJ found that Reesman had the following severe impairments: a history of remote cerebrovascular accidents and obesity. R. at 34–36. At step three, the ALJ determined that Reesman's impairments do not meet or medically equal a listed impairment. R. at 36. After determining Reesman's RFC (R. at 36–41), the ALJ determined at step four that Reesman was able to perform her past relevant work through the date she was last insured. R. at 41. In the alternative, at step five, the ALJ determined that Reesman could have successfully adjusted to perform other jobs that existed in significant numbers in the national economy. R. at 42. Therefore, the ALJ concluded that Reesman was not disabled from October 14, 2005, through her last insured date of June 30, 2008. R. at 42.

Reesman claims the ALJ failed to follow the treating physician rule in determining her RFC. She argues that her treating physician, Dr. Roger L. Thomas, supported his opinion with clinical and diagnostic evidence and that the ALJ did not cite any specific evidence contradicting Dr. Thomas's opinion. Reesman also claims the ALJ failed to properly evaluate her own credibility, arguing that the ALJ relied on findings that are irrelevant to her disability claim.

The Commissioner argues that the ALJ properly evaluated the medical opinion evidence and Reesman's credibility and that the ALJ's assessment of Reesman's RFC is supported by substantial evidence.

**III. ALJ's RFC Findings Are Supported by Substantial Evidence**

Accordingly to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7.[3] It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. *Cruse v. U.S. Dep't of Health & Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. *Brown v. Comm'r of the Social Security Admin.*, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

---

[3]SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 9 (1990); *Nielson v. Sullivan*, F.2d 1118, 1120 (10th Cir. 1993).

>The ALJ made the following RFC findings regarding Reesman:
>
>. . . claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(b) to include lifting or carrying up to 50 pounds occasionally or 25 pounds frequently, standing or walking about 6 hours out of an 8 hour workday, and sitting about 6 hours out of an 8 hour workday.

R. at 36. Reesman argues that the ALJ's analysis was flawed for two reasons, which the court addresses below.

*A. Evaluation of Dr. Thomas's Medical Opinion*

Reesman argues that the ALJ did not properly consider Dr. Roger L. Thomas's medical opinion. The ALJ gave little weight to the opinions of Dr. Thomas, Reesman's treating physician. The court finds that this was not error.

A treating doctor's opinion should be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. 404.1527(c)(2). An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the answer to this question is "no," then the inquiry is complete. *Id.* If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, it is not entitled to controlling weight. *Id.*

Even if the treating source's medical opinion does not meet the test for controlling weight, it is still entitled to deference and must be weighed using the factors

provided in 20 C.F.R. 404.1527(c) and 416.927(c). *Id.* (citing to SSR 96–2p, 1996 WL 374188, at *4). These factors are (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (internal quotation marks omitted). "The court does not require a formalistic factor-by-factor analysis in weighing medical opinions so long as the ALJ's decision is sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Castillo v. Astrue*, No. 10-1052-JWL, 2011 WL 13627, at *6 (D. Kan. Jan. 4, 2011) (internal citations and quotation marks omitted).

Dr. Thomas was the source of three separate pieces of evidence offered by Reesman. R. at 40. First, on June 17, 2008, Dr. Thomas treated Reesman for an ankle sprain she had suffered the week before. Dr. Thomas restricted her weight bearing by fifty percent. The ALJ noted that Reesman was later referred to a podiatrist and orthopedic surgeon for a possible microfracture, but she was successfully treated with a Cam Boot and physical therapy, and Reesman provided no evidence that this injury presented more than a minimal limitation in her ability to work. R. at 40. The ALJ considered this injury brief, temporary, and not indicative of Reesman's overall

8

functioning throughout the relevant time period at issue. R. at 40. As the ALJ noted, treatment notes on October 9, 2008 show that Dr. Thomas cleared Reesman to return to her exercise program at Curves with no mention of ankle pain. To the extent that Dr. Thomas's opinions relate to Reesman's ankle injury, the ALJ gave them little weight in the RFC analysis, citing a lack of supporting evidence and inconsistency with the entire record.

The court notes that Dr. Thomas did not provide an opinion explicitly stating that Reesman's ankle injury in 2008 disabled her. Rather than giving "little weight" to Dr. Thomas's treatment notes, a more precise rendering would be that the ALJ found these treatment notes did not support Dr. Thomas's later opinion that Reesman was unable to work. The ALJ properly determined that Dr. Thomas's fifty-percent reduction in Reesman's weight-bearing ability was not representative of her functioning throughout the alleged period of disability. Reesman provided no evidence that Dr. Thomas's restrictions on her weight bearing were anything more than temporary. Substantial evidence supports the ALJ's finding that Reesman's sprained ankle was treated conservatively, and within a few months she was able to participate in a workout routine at Curves. Accordingly, to the extent that Dr. Thomas's opinion reasonably relates to Reesman's ankle injury, the ALJ's decision to assign it little weight in the RFC analysis was without error.

Second, on November 5, 2009, Dr. Thomas submitted a letter, the body of which is quoted here in its entirety:

9

> Mrs. Reesman has been unable to work since 2007. She has several medical problems that prevent her from working. She has had two strokes that have caused cognitive deficits and weakness in her legs. She cannot sit or stand very long due to low back pain. She has peripheral artery disease that precludes much walking or standing.

R. at 594. In giving little weight to this opinion, the ALJ started by noting that it did not support Reesman's claim of disability starting in April of 2003. The ALJ went on to explain that the opinion was not well-supported by the evidence as to 2007 or any other time before Reesman's insured status ended. In his analysis, the ALJ pointed out that Dr. Thomas's letter did not provide objective evidence or examination findings from the relevant time period. Further, the ALJ found that Reesman's subjective complaints in Dr. Thomas's treatment notes did not support the ongoing limitations listed in the letter. Finally, the ALJ suggested that the lack of specific functional limitations in Dr. Thomas's letter indicated an attempt to resolve the issue of disability that is properly reserved to the commissioner.

The court finds that the ALJ applied the appropriate standard and did not err in analyzing Dr. Thomas's letter. First, the ALJ held that the letter was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and thus, did not qualify for controlling weight. Second, the ALJ applied the appropriate factors, holding that the lack of medical evidence and inconsistency with the record were so great that it should receive little weight.

Dr. Thomas's letter was vague, indicating only that Reesman "cannot sit or stand very long," and that her impairments would prevent her from performing "much walking and standing," ultimately concluding she was "unable to work." In support of

10

his opinion, Dr. Thomas points to cognitive defects, weakness in Reesman's legs, low back pain, and peripheral artery disease. He considers the first two to be the results of Reesman's strokes. The ALJ's opinion summarizes the evidence on all of these symptoms, finding that their magnitude of impairment is not as great as either Dr. Thomas or Reesman claim.

A couple of weeks after Reesman's stroke, her treatment notes indicate no evidence of residual effects from the stroke, and her speech therapist considered her to have made a full recovery. Although Reesman claimed loss of memory, she was able to provide an adequate history at her 2005 consultative examination. At this exam, she also displayed a preserved range of motion without motor or sensory deficits and only mild difficulty with orthopedic maneuvers. Short of sporadic complaints of leg pain, Reesman's treatment notes do not reflect any substantial leg weakness, let alone weakness attributed to her stroke.

Regarding low back pain, Reesman reported this pain infrequently before the expiration of her date last insured. The ALJ points out that Reesman had no significant examination findings—positive straight leg raising, absent reflexes, or sensation deficits—and that bone density testing indicated only osteopenia. A 2010 lumbar MRI—performed years after Dr. Thomas believed Reesman became unable to work—revealed only mild disc bulging and foraminal narrowing. Regarding peripheral artery disease, in 2005, Reesman's vascular specialist found only mild atherosclerosis obliterans in her lower extremities, with intermittent claudication. Reesman had been treated for this with medication, and her peripheral artery disease was considered stable in 2008. The

11

ALJ properly concluded that Dr. Thomas's opinion was not well-supported and inconsistent with the record.

In addition to exceeding the available evidence in support, Dr. Thomas's conclusion exceeds the scope of his expertise; it is an administrative finding that is dispositive of the case, and therefore, left to the commissioner. The court finds the ALJ did not err in applying the standards to Dr. Thomas's 2009 letter.

In his third contribution to Reesman's claim, Dr. Thomas filled out a stroke impairment questionnaire prepared by Reesman's counsel dated November 3, 2010. R. at 756–61. In this form, Dr. Thomas expresses the opinion that Reesman is limited to sitting between one and two hours per day, standing or walking between one and two hours per day, and lifting or carrying up to twenty pounds occasionally. Dr. Thomas noted that Reesman's symptoms would frequently interfere with attention and concentration, and he indicated that she is incapable of working even a low stress job due to back pain, an inability to concentrate and remember, and poor control of her right hand. He estimated Reesman would miss more than three days per month for these reasons.

The ALJ also gave this questionnaire little weight in his RFC findings, relying on the same factors: lack of medical evidence in support and inconsistency with the record as a whole. The ALJ pointed out that Dr. Thomas's treatment notes prior to Reesman's last insured date do not support his conclusions as stated in the questionnaire. These treatment notes described routine care and treatment for mild issues, including respiratory infections, urinary tract infections, and a sprained ankle. Reesman did not

12

report any symptoms frequently and consistently in a way that would indicate a chronic, serious health concern such as the ones mentioned by Dr. Thomas. The ALJ properly gave Dr. Thomas's questionnaire little weight, finding that it was full of unsupported opinions.

Summarizing Dr. Thomas's treatment notes of Reesman, this court finds the ALJ gave a proper, error-free analysis. The treatment notes reveal that Reesman saw Dr. Thomas eighteen times from the beginning of 2007 to her date of last insured. During this time, Reesman complained of back pain twice. She complained about issues related to lifting, carrying, stooping or bending twice. She complained of dizziness once. She did not complain of leg issues or right hand weakness, balance/coordination problems, concentration or memory problems. She complained about an ingrown toenail once and feet/ankle pain once, from walking barefoot on hardwood floors.

Reesman argues that the ALJ failed to provide evidence contradicting Dr. Thomas's opinions. This flips the burden. The ALJ does not have to disprove the treating physician's opinions. The ALJ considers whether the opinion is well-supported by clinical and laboratory diagnostic techniques and whether it is consistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(c). Finding Dr. Thomas's opinions unsupported, the ALJ was required to apply the regulatory factors to determine the appropriate amount of weight for the opinions. The ALJ did this here, and the court finds no err in the analysis.

*B. Evaluation of Reesman's Credibility*

Reesman argues that the ALJ improperly evaluated the credibility of her subjective complaints of disabling limitations. The ALJ found that the objective evidence, examination findings and treatment notes did not support the disabling degree of limitation alleged by Reesman. This conclusion is supported by substantial evidence.

"[C]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). "Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.*

The ALJ must consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) whether there was a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and (3) whether, considering both objective and subjective evidence, the claimant's pain was in fact disabling. *See Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). To determine the credibility of a claimant's complaints of disabling pain, the ALJ should consider the claimant's levels of medication and their effectiveness, the

14

extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence. *Branham v. Barnhart*, 385 F. 3d 1268, 1273-1274 (10th Cir. 2004) (quoting *Hargis v. Sullivan*, 945 F. 2d 1482, 1489 (10th Cir. 1991)).

The ALJ found that Reesman established a pain-producing impairment by objective medical evidence and that there was a "loose nexus" between that impairment and her subjective allegations of pain. However, after considering subjective and objective evidence, the ALJ found the claimant's pain was not disabling. Specifically, the ALJ did not find credible Reesman's testimony on intensity, persistence, and the limiting effects of her pain. For example, the ALJ acknowledged that an MRI had confirmed Reesman's stroke in 2002, but the medical records did not corroborate her continuing limitations. The treatment notes indicated no residual effect and a full recovery by Reesman just weeks after the stroke. Reesman claimed significant memory loss from her strokes, but she was able to recall short-term and long-term background information at her psychological examination in July of 2005, and again in September of 2005. Despite Reesman's claim that she cannot concentrate, treatment notes from her psychological exam in July of 2005 indicate otherwise. The ALJ noted that Reesman admitted to playing multiple computer games at home, suggesting her ability to concentrate is not as limited as she claims. Reesman testified she can only lift twenty

15

pounds because of carpal tunnel syndrome and wrist pain, but the ALJ found her treatment records did not reflect ongoing complaints of carpal tunnel. Rather, Reesman had positive signs of carpal tunnel in 2005, but her dexterity was preserved and she was advised to use wrist splints; she exhibited sixty pounds of grip strength and preserved dexterity at an exam three months later, with no further problems in her treatment records through her date last insured. Despite Reesman's testimony that back pain limits her sitting and standing, the ALJ found only infrequent complaints of back pain and no significant correlating findings in the treatment notes. Examination findings in September 2005 showed a preserved range of motion without motor or sensory deficits, and an MRI in 2010 showed only a mild disc bulge resulting in mild left foraminal narrowing. Further, Reesman testified she did not receive any treatment other than medication for back pain prior to her date last insured. The ALJ made similar findings regarding Reesman's testimony about the effects of peripheral vascular disease.

The court finds the ALJ's credibility evaluation supported by the factors listed above. The ALJ's decision reflects that he carefully assessed the relevant medical opinions regarding Reesman's functioning. As the ALJ indicated, Reesman's treatment records or consultative reports did not document limitations consistent with disability. Medical records show that proper treatment and medication improved her conditions. While she saw her treating physician on a regular basis, her complaints regarding the symptoms alleged were sporadic. Plaintiff seemed to be fairly active in her daily activities, such as playing computer games, attending Curves fitness classes, going to a water park, attending garage sales, traveling to Maine, and driving several hours at a

time to visit her son. The medical records presented by plaintiff's physicians are not consistent with her allegations. The court affirms the ALJ's RFC assessment because it is supported by substantial evidence.

## IV. Conclusion

Reesman had a fair hearing and a full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the court affirms the Commissioner's decision for the reasons set forth above.

IT IS THEREFORE ORDERED this 11th day of June, 2014, that the present appeal is hereby denied. The court affirms the decision of the Commissioner.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE